## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KELVIN LEANDER SELLERS,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀1:16CV891
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
GEORGE SOLOMON, et. al.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendants George Solomon and Michael Davis's ("Defendants") motion for summary judgment. (Docket Entry 19.) This matter is ripe for disposition. For the following reasons, the Court will recommend that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

Plaintiff, a prisoner of the State of North Carolina, seeks declaratory and injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983 for alleged federal constitutional violations related to exposure to tobacco smoke. (*See* Docket Entry 1.) In his complaint, Plaintiff alleges seven incidents in which unnamed Davidson Correctional Center ("Davidson") officers[1] failed to enforce Davidson's no-tobacco policy. All seven incidents

---

[1] Plaintiff's reply names the officers involved in all but one of these incidents (Docket Entry 22 at 2-3), apparently based on the post narratives Defendants attached to their motion for summary judgment (Docket Entry 20-3 at 23-29). Plaintiff's reply names Officers Underwood, Anderson, Butt, Muriello, Skeen, and de Shato as the officers involved. (Docket Entry 22 at 2-3.)

involve smoking inside Davidson's D-dorm where Plaintiff is housed. (*Id.* at 3.) Of these seven incidents, five involve prisoners smoking in the back of the dorm or at the dorm window while an unnamed correctional officer was at the desk. (*Id.*) Plaintiff contends that on several of those occasions, the officer at the desk was asleep; on one occasion, the officer was doing a puzzle. (*Id.*) The remaining two incidents involve an officer either witnessing smoking or noticing smoke. One time, an unnamed officer allegedly "Came thru - Guys smoking - she told them not to burn the bed[.]" (*Id.*) Another time, an unnamed officer "open doors – made comment you all should smoke out doors." (*Id.*)

In support of their motion for summary judgment, Defendants have submitted the affidavits of Defendant Davis and Nurse Tara Young as well as numerous exhibits. (Docket Entries 20-3, 20-4.)[2] These materials demonstrate, first, that efforts are made to enforce the no-tobacco policy.

> [O]fficers are reminded to perform daily searches, patrol the outside perimeters of the fences and follow up on any intelligence we have of inmates who traffic in tobacco. We request telephone transcripts on inmates we suspect of dealing in tobacco, we strip search inmates returning from visits and pat down inmates as they enter the confines from outside work assignments. From 23 February 2016 through 18 December 2016 officers performed over 105 locker searches just on inmates who live in C&D Dorm
> . . . .

---

[2] Defendants exhibits include the North Carolina Department of Public Safety's prison health care and tobacco policies (Exs. A & B, Docket Entry 20-3 at 12-19); an email from Defendant Davis to Davidson supervisory correctional staff regarding violations of the state's tobacco policy at Davidson (Ex. C, *id.* at 20); tobacco-based infraction count and rate reports (Ex. D, *id.* at 21-22); C&D dorm post narratives for the dates of the incidents alleged in Plaintiff's complaint (Ex. E, *id.* at 23-29); Plaintiff's case manager's contact notes (Ex. F, *id.* at 30-35); and Plaintiff's medical records (Ex. A, Docket Entry 20-4 at 6-56).

(*Id.* at 4.) Davidson staff also pursue disciplinary action against inmates who get caught with tobacco or tobacco products. (*See id.* at 4, 21-22 ("From 1 September 2015 through 31 December 2015 there were forty-eight (48) B-16 infractions (tobacco) issued and 194 B16 infractions have been issued [through December 15,] 2016.").) Second, these materials show that Plaintiff has not submitted a sick call request or complained to medical care providers that he suffers from the effects of secondhand smoke. (Docket Entry 20-4 at 2-3, 6-56.)[3] Neither has he mentioned the problem to his case managers. (Docket Entry 20-3 at 30-35.)

Plaintiff's reply lists thirty-seven additional instances of Davidson officers' non-enforcement of the no-smoking policy, twenty-seven of which actually involve smoking in the dorm. (*See generally,* Docket Entry 22.) At least four of these descriptions speak, for the first time, to the levels of smoke to which he alleges he was exposed. (*Id.* at 9.) For example, Plaintiff claims that on March 31, 2017, "Director Flaherty came around to post note on bullaten board about smoke came in inhaling the smoke smell and just begin to cough/gag. Its this bad in here." (*Id.*) He also describes smoke in the dayroom on October 2, 2016 that was "thick like a cloud". (*Id.* at 6.) Plaintiff's reply is neither styled as an affidavit nor includes any supporting documentation.

## II. STANDARD OF REVIEW

Defendants have moved for summary judgment in this matter. (Docket Entry 19.) Summary judgment is appropriate when there exists no genuine issue of material fact and the

---

[3] These records also reveal Plaintiff's past and current medical diagnoses and medications. (Docket Entry 20-4 at 2-3, 6-56.) Plaintiff asserts in his reply that his "medications has nothing to do with this case. . . . [the] Lawsuit is for effects of inhaling second hand smoke, and the effects it has on [Plaintiff's] health in the months and years to come." (Docket Entry 22 at 1.)

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49. Here, Plaintiff is a *pro se* litigant; thus, his pleadings are to be liberally construed. *Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

## III. DISCUSSION

As an initial matter, the Court notes that Plaintiff has not provided any evidence, but rather relies on his unsupported allegations. Nevertheless, even taking these allegations in the light most favorable to Plaintiff, he nevertheless has failed to demonstrate the existence of a genuine issue of material fact. Defendants should therefore be entitled to judgment as a matter of law.

### A. Deliberate Indifference

Plaintiff argues that Defendants have violated his federal constitutional rights because they "failed in upholding the law - no tobacco products allowed." (Docket Entry 1 at 3.) Plaintiff contends that their failure puts him "at serious risk for injury" (*id.*) from the "effects of inhaling second hand smoke, and the effects it has on [Plaintiff's] health in the months and years to come" (Docket Entry 22 at 1). In other words, Plaintiff alleges that Defendants were deliberately indifferent to the risk that exposure to environmental tobacco smoke ("ETS") would cause him future injury. (*Id.*)

"Claims that prison officials failed to provide adequate medical care . . . sound in the Eighth Amendment . . . [and thus] there is a subjective and an objective component to showing a violation of the right." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The plaintiff must demonstrate that (1) he *objectively* has "serious medical needs" and (2) that the prison official or officials *subjectively* acted with "deliberate indifference" to those needs. *Id.* For the reasons that follow, the Court finds that Plaintiff has not shown a genuine issue of material fact as to either the objective or the subjective prong of the test.

The Supreme Court of the United States has recognized that exposure to ETS can constitute serious medical injury or need that satisfies the objective prong of the deliberate indifference analysis. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To prevail on a claim of future injury from ETS, a prisoner "must show that the levels of ETS exposure are so substantial as to endanger his future health and that 'society considers the risk . . . so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Bartlett v. Pearson*, 406 F. Supp. 2d 626, 630 (E.D. Va. 2005) (emphasis in the original) (citing *Helling*, 509 U.S. at 36).[4] However "sporadic and fleeting exposure to second-hand smoke [may be] unwelcome and unpleasant, [but] it [does] not constitute 'unreasonably high levels of ETS.'" *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (citation omitted); *Turner v. Leggett*, 421 F. App'x 129, 132 (3d Cir. 2011) (comparing *Helling*, 509 U.S. at 35 (holding that bunking with a cellmate who smoked five packs of cigarettes per day exposed an inmate to an unreasonable risk of future harm from ETS exposure) and *Atkinson v. Taylor*, 316 F.3d 257, 259 (3d Cir. 2003) (holding that a prisoner who claimed that he had shared a cell with constant smokers for many months stated a claim for a violation of a clearly established right) with *Richardson*, 260 F.3d at (holding that sitting near some smokers sometimes is not an unreasonable exposure to ETS) and *Pryor–El v. Kelly*, 892 F. Supp. 261, 267 (D.D.C. 1995) (dismissing an ETS claim in which

---

[4] A prisoner can also prevail by showing a lesser degree of exposure if he has a history of respiratory problems. *Estelle*, 429 U.S. at 97; *Tudor v. Harrison*, 195 F. App'x 160, 161 (4th Cir. 2006) (affirming district court's limited finding of deliberate indifference to serious medical need when prison failed to enforce non-smoking policy or to develop a screening process to separate smokers from non-smokers with medical needs, such as asthma). Here, Plaintiff specifically alleges future harm, not aggravation of a preexisting condition. (Docket Entry 22 at 10.)

the plaintiff alleged "only that various unnamed inmates and prison officials smoke 'in the TV room, games room, and the letter writing room'").

Here, Plaintiff has not shown a serious medical need because he has not identified any evidence that he was exposed to an objectively unreasonable level of ETS. *See, e.g., Simba*, 2007 WL 2873808, at *5 (ruling that a mere allegation of exposure to environmental smoke was insufficient to support an Eighth Amendment claim); *Tyson v. Ozmint*, Civil Action No. 6:06–0385–PMD–WMC, 2006 WL 3139841, at *4 (D.S.C. Oct.30, 2006) (unpublished) (same). Rather, Plaintiff's complaint alleges that other inmates were smoking indoors at a particular time on seven specific days within a forty-day period. (Docket Entry 1 at 4.) Even if, as he states in his reply, Plaintiff was exposed to high levels of ETS on thirty-four occasions in twenty months (Docket Entry 22 at 2-10), smoking in the dorm does not appear to occur so frequently that Plaintiff's exposure to it violates contemporary standards of decency. There is no evidence that these isolated incidents created a risk to Plaintiff so substantial as to endanger Plaintiff's future health and so constitute a serious medical need. There is therefore no genuine issue of fact as to the objective prong.

The subjective prong of the deliberate indifference analysis is met when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, the official must know the facts from which an inference of serious harm could be drawn and must actually draw the inference. *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir.2001) (citing *Farmer*, 511 U.S. at 837)). Even without direct evidence, a reasonable fact-finder "may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. However, the existence and

enforcement (even if imperfect) of a no-smoking policy forecloses deliberate indifference claims predicated on exposure to ETS. *See, e.g., Scott v. D.C.*, 139 F.3d 940, 944 (D.C. Cir. 1998); *Simba v. Hunt*, No. 5:98-CT-691F3, 2007 WL 2873808, at *6 (E.D.N.C. Sept. 26, 2007) (unpublished); *Bartlett v. Pearson*, 406 F. Supp. 2d 626, 631–33 (E.D. Va. 2005).

Here, there is no evidence that Defendants knew of and disregarded a substantial risk to Plaintiff. For the reasons stated above, there was no significant risk, let alone one so obvious Defendants should be deemed to have known of it. *Farmer*, 511 U.S. at 842. In addition, there is no evidence that Plaintiff complained either to medical staff at Davidson or to his case managers about environmental smoke causing him problems thereby potentially alerting Defendants to a risk of harm unique to him. (Docket Entry 20-4 at 2-3, 6-56; Docket Entry 20-3 at 30-35.) Thus, Plaintiff has not shown that Defendants knew that ETS posed a substantial health risk to him. Moreover, even if Plaintiff had shown that a sufficiently serious risk existed *and* that Defendants knew of that risk, his claims would still fail the subjective inquiry because Defendants were not deliberately indifferent to ETS. On the contrary, at all relevant times, Davidson had a no-tobacco policy in place. Although Plaintiff alleges that some correctional officers failed to enforce the no-tobacco policy, he provides no evidence that Defendants knew of these failures. Rather, the evidence shows that Defendants made efforts to keep tobacco out and to discipline inmates who possessed or used tobacco. (*Id.*) These efforts to enforce the no-tobacco policy foreclose Plaintiff's deliberate indifference claim. *See Scott*, 139 F.3d at 944; *Simba*, 2007 WL 2873808, at *6; *Bartlett*, 406 F. Supp. 2d at 631–33.

In light of these facts, Plaintiff's claim that Defendants were deliberately indifferent to the risk ETS posed to him fails as a matter of law. Simply put, no reasonable fact-finder could conclude from the record that ETS posed a substantial risk of harm to Plaintiff, that Defendants "subjectively recognized a substantial risk of harm" to Plaintiff, or that Defendants "subjectively recognized that [their] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Brown v. Harris*, 240 F.3d 383, 390–91 (4th Cir. 2001)). Defendants' motion for summary judgment should therefore be granted.

### B.    Qualified Immunity

Defendants also assert that qualified immunity shields them from civil damages in their individual capacities. (Docket Entry 20 at 17-19.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983 . . . ."). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional

right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[5] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

In the instant case, having found that Plaintiff has not supported his claim for a constitutional violation, Defendants should also be entitled to qualified immunity as to any damages against them in their individual capacities. *See Jackson v. Holley*, 666 F. App'x 242, 244-45 (4th Cir. 2016) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)).

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 19) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

May 15, 2018
Durham, North Carolina

---

[5] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194, in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.